UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSHUA J. HARRISION                     Case No. 18-10374

               Plaintiff,             Nancy G. Edmunds
     v.                                 United States District Judge

COMMISSIONER OF SOCIAL                   Stephanie Dawkins Davis
SECURITY,                                United States Magistrate Judge

               Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 13, 16)**

## I.   PROCEDURAL HISTORY

A.   Proceedings in this Court

On January 31, 2018, plaintiff Joshua J. Harrison filed the instant suit. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Nancy G. Edmunds referred this matter to the undersigned for the purpose of reviewing the Commissioner's unfavorable decision denying Harrison disability benefits. (Dkt. 3). This matter is before the Court on cross-motions for summary judgment. (Dkts. 13, 16). Harrison also filed a reply in support of his motion for summary judgment. (Dkt. 18).

B.     Administrative Proceedings

On December 2, 2014, Harrison filed an application for period of disability and disability insurance benefits, alleging disability beginning on May 26, 2014. (Tr. 22).[1]  Harrison's claim was initially denied on April 9, 2015.  (Tr. 22).  He requested a hearing and appeared on January 24, 2017 before Administrative Law Judge ("ALJ") Margaret O'Donnell.  (Tr. 38-75).  In a decision dated March 23, 2017, the ALJ found that Harrison was not disabled.  (Tr. 19-32).  Harrison requested a review of this decision and the ALJ's decision became the final decision of the Commissioner when the Appeals Council, on January 19, 2018, denied his request for review.  (Tr. 1-7); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that the Court **DENY** plaintiff's motion for summary judgment, **GRANT** defendant's motion for summary judgment, and **AFFIRM** the findings of the Commissioner.

## II.     FACTUAL BACKGROUND

A.     ALJ Findings

Harrison was born in 1974 and was 39 years old on the alleged disability onset date.  (Tr. 31).  He has a high school education and past relevant work as a

---

[1] The Administrative Record appears on the docket at entry number 9.  All references to the same are identified as "Tr."

courier (unskilled) for a law firm.  (Tr. 30).  Harrison lives with his wife and all of

his children, except the oldest child.  (Tr. 44).  He stopped working in May 2014

because of his back pain and depression.  (Tr. 49, 169).

The ALJ applied the five-step disability analysis to Harrison's claims and

found at step one that he did not engage in any substantial gainful activity since the

alleged onset date.  (Tr. 24).  At step two, the ALJ found that Harrison had the

following severe impairments: spine disorder, status post L5-S1 microdiscectomy

and revision surgery, and obesity.  *Id*.  At step three, the ALJ found that Harrison

did not have an impairment or combination of impairments that met or equaled one

of the listings in the regulations.  (Tr. 25).  The ALJ determined that Harrison has

the residual functional capacity (RFC) to perform sedentary work except that he

can only occasionally climb, balance, stoop, crouch, crawl, and kneel and requires

a sit/stand option every 15 minutes.  (Tr. 25-26).  At step four, the ALJ determined

that Harrison could not perform any past relevant work.  (Tr. 30-31).  At step five,

the ALJ concluded that there were a significant number of jobs that Harrison could

perform in the national economy and thus, he was not under a disability from the

alleged onset date through the date of the decision.  (Tr. 31).

## III.   DISCUSSION

### A.   <u>Standard of Review</u>

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If a claimant does not obtain relief during the7 administrative review process, the claimant may file an action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo,

resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

The Court's review is limited to an examination of the record only.  *Bass*,

499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When

reviewing the Commissioner's factual findings for substantial evidence, a

reviewing court must consider the evidence in the record as a whole, including

evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human*

*Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the

district court may look to any evidence in the record, regardless of whether it has

been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528,

535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the

reviewing court discuss every piece of evidence in the administrative record.

*Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n

ALJ can consider all the evidence without directly addressing in his written

decision every piece of evidence submitted by a party.") (internal citation marks

omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526

(6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.).

Title II benefits are available to qualifying wage earners who become disabled

prior to the expiration of their insured status; Title XVI benefits are available to

poverty-stricken adults and children who become disabled.  F. Bloch, Federal

Disability Law and Practice § 1.1 (1984).  While the two programs have different

eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability"

means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

7

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis set forth at 20 C.F.R. §§ 404.1520, 416.920.  Essentially, the ALJ must determine whether:  (1) the plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to perform past relevant work, whether there is work in the national economy that the plaintiff can perform.  *Id*.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

   C.   Analysis and Conclusions

      1.   Treating physician opinions[2]

Harrison argues that the ALJ failed to give controlling or appropriate weight

to the opinions of his treating physician, Dr. Schwarz.  The ALJ gave  Dr.

Schwarz's opinion  little weight, finding that the treatment notes were not

consistent with the forms executed by Dr. Schwarz.  Harrison disputes the ALJ's

conclusion that Dr. Schwarz's clinical treatment notes essentially indicate normal

physical examinations and that "he left the back complaints to specialists."  (Tr.

29-30).  According to Harrison, the ALJ incorrectly stated that the "first positive

---

[2] Harrison also relies on the opinions offered by Dr. J. Alan Robertson, an orthopedic surgeon.  Harrison submitted Dr. Robertson's report to the Appeals Council.  (Tr. 10-17).  The Appeals Council concluded that Dr. Robertson's report did not relate to the period under review. (Tr. 2).  In any event, the Court cannot consider new evidence submitted to the Appeals Council. Where the Appeals Council denies review, it is well-established that this Court's review is limited to the record and evidence before the ALJ.  *See Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 838 (6th Cir. 2016); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Walker v. Barnhart*, 258 F.Supp.2d 693, 697 (E.D. Mich. 2003).  While a district court can remand the case for further administrative proceedings in light of such evidence if a claimant shows the evidence satisfies the standard set forth in sentence six of 42 U.S.C. § 405(g), Harrison has made no argument for a sentence six remand.  *Foster*, 279 F.3d at 357; *see also Lee v. Comm'r of Soc. Sec.*, 529 Fed. Appx. 706, 717 (6th Cir. July 9, 2013) (stating that "we view newly submitted evidence only to determine whether it meets the requirements for sentence-six remand.").

musculoskeletal findings in Dr. Schwarz's treatment notes are from an April 2016 office visit, where it was stated that (his) purpose for seeing Dr. Schwarz was to get paperwork for his disability attorney."  Harrison points to Family Medical Leave Act paperwork completed by Dr. Schwarz dated June 10, 2014 along with office notes throughout 2014-2016 indicating back pain, muscle weakness, leg numbness, difficulty walking, and a number of other positive findings, along with the management of his pain medications.  (Tr. 308-309, 299, 301, 296, 298, 291, 288-289, 563, 589, 581, 574, 577, 570, 557-559, 554, 548-550).  Harrison contends that the ALJ summarily dismissed Dr. Schwarz's opinions despite his long-term treatment of Harrison and he failed to balance the regulatory factors.  Harrison also argues that the ALJ's reasons for not giving Dr. Schwarz's opinion controlling weight are not accurate and are factually inconsistent.

Harrison also argues that the ALJ's decision to give Dr. Ebenezer's opinion "great weight" only as to the portion where he says that Harrison cannot engage in heavy lifting or strenuous activities is "patently unfair" and a cherry-picking of the record.  Harrison maintains that the ALJ should have applied the indications of chronic pain in Dr. Ebenezer's opinions as well.

In response, the Commissioner asserts that the ALJ correctly contrasted Dr. Schwarz's opinions with his treatment notes.  Dr. Schwarz opined that Harrison had several "objective signs" of his impairments and limitations.  (Tr. 360, 616).

But as the ALJ pointed out, Dr. Schwarz's treatment notes show "essentially . . .
normal physical examinations" aside from treatment notes for April 2016.  (Tr. 29,
554).  The Commissioner maintains that the ALJ also correctly contrasted Dr.
Schwarz's opinion with that of Harrison's neurosurgeon, Dr. Ebenezer.  While Dr.
Schwarz opined that Harrison had various extreme limitations, Dr. Ebenezer
(despite "fully support[ing]" his disability application) did not identify any such
limitations.  (Tr. 651).  Rather, Dr. Ebenezer opined only that Harrison should not
engage in "heavy lifting or strenuous physical activity."  (Tr. 651).

        The ALJ also pointed out that Dr. Schwarz mainly treated Harrison for other
impairments and "le[ft] the treatment of . . . back complaints to specialists."  (Tr.
30).  While Dr. Schwarz initially saw Harrison for lower back pain, (Tr. 296, 299),
he then referred him to Dr. Ebenezer.  (Tr. 294, 322).  Subsequently, the
Commissioner says that Dr. Schwarz saw Harrison only for a surgery clearance
(Tr. 287), for unrelated complaints, such as an upper respiratory infection (URI)
(Tr. 284), a medication refill (Tr. 579), lower abdominal pain (Tr. 558), a physical
(Tr. 563), and to provide disability paperwork.  (Tr. 550).  According to the
Commissioner, this relatively limited treatment supports the ALJ's decision not to
accept Dr. Schwarz's opinions, which were based primarily on Harrison's back
impairments. (Tr. 360, 366, 615).  The Commissioner also contends that the
"abnormalities" cited by Harrison in Dr. Schwarz's records are merely his

allegations, which Dr. Schwarz recorded in sections titled "History of Present Illness" and "Review of Symptoms."  (Pl.'s Br. at 14-15; Tr. 291, 296, 299, 301, 548-50, 557-59, 563, 570, 574, 577, 581).  The Commissioner argues that any error in not considering Dr. Schwarz's opinion that Harrison was incapacitated from May 2014 to July 2014 is harmless because the opinion does not contradict the ALJ's decision that Harrison was not disabled from May 2014 to March 2017.  (Tr. 32 Finding 11).

The Commissioner's argument carries the day here.  The opinion of a treating physician should be given controlling weight if it is: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2).  Once an ALJ has determined that a treating source opinion is not entitled to controlling weight, the ALJ must give good reasons for the weight accorded to the opinion.  The reasons provided must be supported by the evidence in the case record and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).  The ALJ is to discuss certain factors, which include, (1) the length of the treatment relationship and frequency of examination, (2) the nature

and extent of the treatment relationship, (3) supportability of the opinion, (4)

consistency of the opinion with the record as a whole, and (5) the specialization of

the treating source.  *Id.*; *see also Wilson,* 378 F.3d at 544; 20 C.F.R. § 404.1527(c).

Failure to analyze a treating source opinion under the two-prong controlling weight

test amounts to the failure to provide good reasons for giving that opinion less than

controlling weight.  *Gayheart* at 376-77.

On July 23, 2015, before Harrison's second back surgery, Dr. Schwarz

completed a Spine Dysfunction Residual Functional Capacity Questionnaire.  (Tr.

350-364).  Based on Harrison's back pain, muscle spasms, and lower extremity

radiculopathy, he opined that Harrison was in constant pain, could walk less than

one block, sit for 15 minutes at a time, stand for 10 minutes at a time, could sit and

stand for less than two hours in an eight hour workday, must walk every 15

minutes for approximately four minutes, requires a job which permits shifting

positions at will from sitting, standing or walking, required unscheduled breaks to

lie down every 15 minutes for 4-5 minutes, but did not need a cane or other

assistive device.  Dr. Schwarz opined that Harrison could occasionally lift/carry

less than 10 pounds and rarely lift/carry 10-20 pounds.  He also found that

Harrison could never twist, stoop/bend, crouch, or climb ladders and that he would

be absent from work more than four days per month.  *Id.*  In support of his

opinions, he noted objective signs including sensory changes, impaired sleep,

abnormal posture, muscle spasm, and muscle weakness. *Id*. Dr. Schwarz also opined that Harrison's narcotic pain medications can cause impaired judgment. *Id*.

On April 28, 2016, approximately seven months after Harrison's second back surgery, Dr. Schwarz completed a physical residual functional capacity questionnaire. (Tr. 366-370). Based on Harrison's chronic low back pain with sciatica, lumbar herniation, numbness, tingling and weakness, Dr. Schwarz opined that Harrison could walk less than one block, sit for five minutes at a time, stand for five minutes at a time, sit, stand/walk less than two hours in an eight hour day, needs to walk throughout the day for five minutes at a time, needs a job that permits shifting positions at will from sitting, standing and walking, needs unscheduled breaks, required a cane for standing/walking, could occasionally lift/carry less than 10 pounds and never lift/carry more than that, could never twist, stoop/bend, crouch/squat, climb ladders or stairs, and would be absent from work more than four days per month. *Id*. Dr. Schwarz pointed to an MRI in support of his findings. He also noted that the narcotic pain medications prescribed to Harrison can cause dizziness, confusion, and drowsiness. *Id*.

Finally, on January 12, 2017, Dr. Schwarz offered an updated opinion, based on Harrison's chronic low back pain, secondary to disc herniation with lower extremity radiculopathy. (Tr. 615-619). Dr. Schwarz opined that Harrison's pain, fatigue, depression and anxiety were exacerbated by simple tasks such as activities

of daily living and household chores and that he required frequent positional changes and opioid pain medications.  Dr. Schwarz pointed to the following objective signs: reduced range of motion in the lumbar/sacral spine, sensory changes, reflex changes, impaired sleep, weight change, muscle weakness, muscle atrophy, abnormal gait, positive straight leg raising.  Dr. Schwarz found that Harrison's opioids could cause impaired judgment, fatigue, and impaired coordination.  He opined that Harrison could walk one city block without rest or severe pain, sit 10 minutes at a time, stand 10 minutes at a time, sit and stand/walk less than two hours in an eight hour workday, needs to walk throughout the day for five minutes at a time, needs a job that permits shifting positions at will from sitting, standing and walking, would require breaks every 10-15 minutes for five minutes in order to lie down, required a cane for standing/walking, could rarely lift/carry less than 10 pounds, and never carry more than that, could never twist, stoop/bend, crouch, or climb ladders, and would miss more than four days of work per month.  *Id*.

The ALJ analyzed Dr. Schwarz's opinions as follows:

> As the claimant's longtime primary care physician, Dr. Schwarz's opinions have been carefully considered, and are given partial weight.  The undersigned agrees with the opinions to the extent they represent a limited range of a sedentary exertional level.  However, it is noted that Dr. Schwarz's clinical treatment notes essentially indicate normal physical examinations, with one exception as discussed above, and thus do not support the

degree of additional non-exertional limitations expressed.
Further, Dr. Schwarz mainly treated the claimant for
sporadic complaints of upper respiratory infections and
the like, leaving the treatment of the claimant's back
complaints to specialists.  His treatment notes, and his
opinions, do not identify specific clinical abnormalities to
support his opinions of the claimant's inability to
sit/stand/walk less than 8 hour [sic] with normal breaks,
nor the extreme degree of laying down, absences, etc.
Similarly, these limitations are not consistent with other
substantial evidence of record, including the opinion of
the treating surgeon, Dr. Ebenezer, who limits only heavy
and strenuous physical activities, which the established
residual functional capacity herein fully accommodates;
accordingly, these portions of Dr. Schwarz's opinions are
given little weight.

(Tr. 25-26).

The ALJ's analysis provides substantial evidence to support his conclusion

that Dr. Schwarz's opinions are entitled to little weight.  The Commissioner points

out that there are few, if any, signs of the abnormalities cited in Dr. Schwarz's

opinions (abnormal posture, abnormal gait, reflex changes, muscle weakness and

atrophy) actually found in his treating records.  Except for a handful of records, Dr.

Schwarz repeatedly noted normal station, normal gait, normal reflexes, normal

sensation, and normal strength and tone.  (Dkt. 16, pp. 6-7, citing Tr. 301, 293,

198, 289, 579, 576, 572, 565-66, 558, 550, 554).  While it is appropriate to look to

the specialist's records, to which Dr. Schwarz was privy,[3] in order to assess the

_____

[3] *See e.g.*, *Bradley v. Comm'r of Soc*. Sec., 2019 WL 3027102, at *6 (E.D. Mich. June 19,
2019), report and recommendation adopted, 2019 WL 3003485 (E.D. Mich. July 10, 2019)

weight afforded to his opinion, it is also significant that Dr. Schwarz was not the

primary treater for Harrison's back pain, and mostly treated him for other,

unrelated issues.  And, Dr. Ebenezer's opinion (which is based on his own

records), does not provide functional limitations greater than those found by the

ALJ.  Accordingly, it is somewhat problematic to use Dr. Ebenezer's records in an

attempt to buttress Dr. Schwarz's opinions when Dr. Ebenezer did not find

Harrison as limited.  Additionally, while Dr. Schwarz opined that Harrison's

medication could cause side effects and Harrison testified that the medications

made him tired and off-balance, the undersigned was not able to locate any such

complaints of side effects by Harrison in the medical records.  *See Essary v.*

*Comm'r of Soc. Sec.*, 114 Fed. Appx. 662, 665 (6th  Cir. 2004) ("Although Essary

testified that she suffered from dizziness and drowsiness as a result of her

medications, Essary's medical records make no indication that Essary reported

such side  effects to any of her physicians."); *Hopkins v. Comm'r of Soc. Sec*., 96

Fed. Appx. 393, 395 (6th  Cir. 2004) (alleged medication side effects of

---

(Treating physician's records include the results of the imaging studies and pain specialists' records, thus, the ALJ's discounting of treating physician's assessment in part because he was not an orthopedic or neurological specialist, was not persuasive) (citing *Haverkate v. Astrue*, 2010 WL 668284, at *9 (M.D. Fla. February 19, 2010) (ALJ erred by rejecting treating physician's opinion on basis that "she is a family practice physician and her assessment rests outside her area of expertise[.]" ALJ "ignores the fact that, as [claimant's] long time treating physician, she was privy to the other [ ] health evidence of record")).

drowsiness, nausea, and blurred vision "not documented in the record").

Accordingly, the undersigned concludes that the ALJ provided sufficiently good

reasons for assigning limited weight to Dr. Schwarz's opinions.

Similarly, there is  no error in the ALJ's failure to mention the FMLA off-

work leave slip signed by Dr. Schwarz for a two-month period from May 22, 2014

through July 13, 2014.  (Tr. 308-309).  This short period of time that Dr. Schwarz

found Harrison unable to work, does not meet the 12-month durational

requirements for disability and thus, does not actually conflict with the ALJ's

finding of non-disability from May 27, 2014 through March 23, 2017.

Accordingly, any failure to discuss this note is harmless.

As to Dr. Ebenezer's opinions that he fully supported Harrison's disability

application, the undersigned agrees with the Commissioner that such an opinion is

not a medical opinion to which any particular deference is due.  *See* 20 C.F.R.

§ 416.927(d)(1) (explaining that whether an individual is "disabled" or "unable to

work" is an issue reserved to the Commissioner and thus not considered a "medical

opinion" as defined elsewhere in the regulations); *see also Bass v. McMahon*, 499

F.3d 506, 511 (6th Cir. 2007) ("No special significance will be given to opinions of

disability, even if they come from a treating physician.").  And, contrary to

Harrison's argument, while Dr. Ebenezer cites his symptoms and need for further

treatment, this recitation does not translate into an opinion regarding any functional

limitations and does not suggest functional limitations greater than those found by the ALJ.

> 2.    Assessment of Harrison's subjective complaints.

Harrison contends that the ALJ failed to properly consider his complaints of pain and made an insufficient credibility determination because there is no step by step analysis and no reasons cited for not accepting Harrison's contentions regarding his pain and ability to function.  Harrison argues that just like *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994), the ALJ considered the medical evidence but failed to consider the plaintiff's daily activities; the location, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage and side effects of medication; treatment for pain; or any other measures taken to relieve the pain as required by the regulations.  Harrison also alleges that the ALJ failed to follow Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996), which requires more than a mere statement that the claimant is not credible.  Harrison complains that the ALJ's decision ignored and did not discuss the effects of medications that were alleged to cause drowsiness.  He says the medications were repeatedly referred to in the medical treatment records with ongoing claims of fatigue which were improperly discounted.  And the ALJ did not analyze the psychiatric impairments, failed to properly consider the disabling nature of the

chronic pain and degenerative conditions and ignored medical evidence that clearly exhibited the extent of medical treatment rendered by a treating physician.

In response, the Commissioner points out that the ALJ specifically discussed Harrison's testimony regarding various regulatory factors, including his functional limitations, daily activities, symptoms, and treatment other than medication. (Tr. 26-27). The ALJ further considered Harrison's alleged difficulty sitting, standing, changing his shoes and preparing meals. (Tr. 26). The ALJ also expressly considered Harrison's allegations of back pain, his use of a cane and physical therapy. (Tr. 26-27). The ALJ also specifically discussed Harrison's alleged tiredness (Tr. 26). And, while Harrison argues that the ALJ did not analyze his psychiatric impairment, the ALJ discussed these alleged impairments and determined that they caused only mild limitations and were therefore nonsevere (Tr. 24-25); a finding that Harrison does not challenge. The ALJ also discussed his microdiscectomies and follow-up treatment with Dr. Ebenezer, as well as his pain management treatment with Sala E. Eldohiri, M.D. (Tr. 27-28). Accordingly, the Commissioner maintains that the ALJ specifically discussed the evidence that Harrison argues he ignored.

Social Security Ruling 16-3p, 2016 WL 1119029 (March 16, 2016), which took effect on March 16, 2016, governs the ALJ's consideration of Harrison's subjective complaints. Accordingly, SSR 96-7p did not apply at the time of the

ALJ's decision.  "A claimant's testimony may be discounted if it is contradicted by the medical reports and other evidence in the record."  *Harley v. Comm'r of Soc. Sec.*, 485 Fed. Appx. 802, 804 (6th Cir. 2012); 20 C.F.R. § 404.1529(c).  In assessing a claimant's subjective symptoms, the rulings and regulations direct an ALJ to focus on the consistency of the complaints with the other evidence in the record.  *Barncord v. Comm'r of Soc. Sec.*, 2017 WL 2821705, at *8 (S.D. Ohio June 30, 2017).  The Sixth Circuit has characterized SSR 16-3p as merely eliminating "'the use of the term credibility ... to clarify that subjective symptom evaluation is not an examination of an individual's character.'"  *Dooley v. Comm'r of Soc. Sec.*, 656 Fed. Appx. 113, 119 n.1 (6th Cir. 2016) (citation and internal quotation marks omitted); SSR 16-3p, 2016 WL 1119029, at *1.  "SSR 16-3p instructs ALJs in accordance with the applicable regulations to consider all of the evidence in the record in evaluating the intensity and persistence of symptoms after finding the claimant has a medically determinable impairment."  *Coffey v. Comm'r of Soc. Sec.*, 2017 WL 3528952, at *8 n.4 (E.D. Tenn. Aug. 16, 2017).  As to a claimant's subjective symptoms, the regulations require an ALJ to consider certain factors, including: (1) daily activities; (2) location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken; (5) treatment, other than medication, to relieve pain or other symptoms; (6) any

measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2016 WL 1119029, at *7 ("In addition to using all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms, we will also use the factors set forth in 20 CFR 404.1529(c)(3).").

While Harrison complains that the ALJ did not fully appreciate his impairments and pain, the decision demonstrates that the ALJ recognized that he had very serious functional limitations and accordingly limited him to a reduced range of sedentary work.  *See* Social Security Ruling 96-9p, 1996 WL 374185 at *3 (1996) ("Individuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations.").  As the Commissioner points out, the ALJ discussed Harrison's difficulty sitting and standing, and provided a sit/stand option in the RFC.  The ALJ also expressly considered his difficulty with activities of daily living (ADL) such as tying his shoes and preparing meals.   The ALJ also discussed his methods of pain relief besides medication, including his use of a cane and physical therapy.  And while, the ALJ specifically discussed Harrison's alleged tiredness, there are also many notations in the record that Harrison did not suffer from fatigue.  (Tr. 548, 552, 556, 570).  Additionally, as  the Commissioner points out, the ALJ discussed

22

Harrison's psychiatric impairments and Harrison has not challenged the ALJ's

finding that they were nonsevere.  As set forth above, the undersigned was not able

to locate any complaints of side effects by Harrison in the medical record.  The

ALJ also discussed Harrison's surgeries and follow-up treatment with Dr.

Ebenezer and pain management treatment with Sala E. Eldohiri, M.D.  (Tr. 27-28).

Thus, plaintiff's proposed grounds for setting aside the ALJ's subjective symptoms

finding seems misplaced; the undersigned finds no compelling reason to disturb the

ALJ's findings and analysis of Harrison's subjective symptoms.

### 3.     Listing 1.04(A)

Harrison next argues that the ALJ did not properly consider the application

of Listing 1.04(A) individually or in combination with the finding of obesity.

Harrison maintains that the ALJ's Listing analysis was erroneous because there are

objective findings that are not discussed in the decision including: nerve root

compression, spinal stenosis, nerve root impairment, and paresthesia which are

documented with objective medical testing along with two failed spinal surgeries

conducted.  Harrison points to the presence of reflex changes and straight leg

raising tests in support of his argument.  (Tr. 615).  Harrison also argues that the

Commissioner should have obtained a medical opinion to support the equivalency

analysis.

For Harrison to meet the criteria of Listing 1.04A, he must show that he has

a disorder of the spine with:

> Evidence of nerve root compression characterized by
> neuro-anatomic distribution of pain, limitation of motion
> of the spine (atrophy with associated muscle weakness or
> muscle weakness) accompanied by sensory or reflex loss
> and, if there is involvement of the lower back, positive
> straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04A.  It is well-settled that to "meet"

a listing, a claimant's impairments must satisfy *each and every* element of the

listing.  *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Blanton v. Soc. Sec.*

*Admin.*, 118 Fed. Appx. 3, 6 (6th Cir. 2004).  This means that to meet Listing

1.04(A), Harrison must show (among other things) "motor loss (atrophy with

associated muscle weakness or muscle weakness."  20 C.F.R. pt. 404, subpt. P,

app. 1 § 1.04(A).  The undersigned agrees with the Commissioner that Harrison

fails to identify any motor loss or evidence that the loss was present "over a period

of time" as required by 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00(D).  While there

are references to "minor" or "intermittent" weakness (Tr. 323, 351, 483, 543, 380,

541, 543, 548, 552, 577) or mildly reduced (4/5) strength in his right leg due to

pain (Tr. 499), Harrison's medical providers also repeatedly described his strength

during the relevant period as largely normal and there are no notations in the

record of atrophy.  (Tr. 541, 5/5 strength on 8/7/14; 566, normal strength on

12/8/15; 626, 5/5 strength on 9/8/15).  Moreover, many of the reports of weakness

are subjective reports, which are insufficient to satisfy the listing.  *See* 20 C.F.R.

pt. 404, subpt. P, app. 1 § 1.00(D) ("[P]hysical findings must be determined on the

basis of objective observation during the examination and not simply a report of

the individual's allegation; e.g., 'He says his leg is weak, numb.'").  While there

may be substantial evidence to support a contrary decision, this Court may not

reverse the Commissioner's decision merely because it disagrees or because "there

exists in the record substantial evidence to support a different conclusion."

*McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006);

The Commissioner also points out that Harrison's impairments do not satisfy

other criteria in Listing 1.04(A), which requires sensory or reflex loss, 20 C.F.R.

pt. 404, subpt. P, app. 1 § 1.04(A), that must be "over a period of time," 20 C.F.R.

pt. 404, subpt. P, app. 1 § 1.00(D).  Dr. Schwarz's notes show normal reflexes (Tr.

298, 289, 558) but abnormal reflexes are found in Dr. Schwarz's and Dr.

Ebenezer's notes (Tr. 554, 266, 514, 522).  Dr. Schwarz's notes show normal

sensation (Tr. 301, 293, 298, 289, 566 ("no sensory loss"), but his notes, along

with Dr. Ebenezer's notes also show sensory loss (Tr. 484, 491, 501, 503, 511,

514, 550, 554, 579).  This mix of observations provides substantial evidence that

Harrison's impairments did not meet Listing 1.04(A), even if there is also

substantial evidence to the contrary.

The undersigned also finds no merit in Harrison's argument that the ALJ should have sought an opinion on equivalency because there is one in the record. The expert opinion requirement for equivalency can be satisfied by a medical advisor's signature on the Disability Determination Transmittal form. *Stratton v. Astrue*, 987 F.Supp.2d 135, 148 (D. N.H. 2012) (citing SSR 96-6p, 1996 WL 374180, at *3 (The expert-opinion evidence required by SSR 96-6p can take many forms, including "[t]he signature of a State agency medical ... consultant on an SSA-831-U5 (Disability Determination and Transmittal Form).")).  Thomas T.L. Tsai, M.D., signed a Disability Determination and Transmittal form, which is sufficient to provide an opinion that did not meet the Listing.  (Tr. 85); *see also Salem v. Colvin*, 2015 WL 12732456, at *3 (E.D. Mich. Aug. 3, 2015) ("Dr. Tsai, while specializing in psychiatry, is a medical doctor, and there is no indication in the governing regulations or case law that a medical professional must be of any particular specialty to evaluate whether a claimant's condition equals a listed impairment. . . . [T]he Commissioner's objection has merit, and the ALJ's reliance on Dr. Tsai's evaluation was proper.").  Accordingly, Harrison's argument that the ALJ failed to obtain an opinion on equivalency is without merit.

4.    SSR 96-8p

Harrison argues that the ALJ failed to evaluate whether he is capable of a competitive work schedule i.e. 8-hour day, 40-hour week, as required by SSR

26

96-8p, 1996 WL 374184, *2 (July 2, 1996).  In response, the Commissioner points out that the ALJ acknowledged that SSR 96-8p governs the RFC determination (Tr. 23, 26) and she also considered Harrison's ability to sit, stand, and walk in the context of an eight-hour workday. (Tr. 30).  According to the Commissioner, Harrison cites no evidence showing the ALJ was unfamiliar with the well-settled proposition that the RFC reflects the ability to work during a 40-hour workweek.  Moreover, this Court has held that "the RFC implicitly encompasses this [ability to perform work on a regular basis] finding" and consequently "[m]ost courts do not require any discussion." *Trischler v. Comm'r of Soc. Sec.*, 2015 WL 5016600, at *20 (E.D. Mich. Aug. 24, 2015).  SSR 96-8p is explicit and provides that, "[o]rdinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  Harrison has simply not explained how the ALJ's decision, and in particular, the formation of the RFC fails to encompass this requirement.  The undersigned finds no error.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the Court **DENY** plaintiff's motion for summary judgment, **GRANT** defendant's motion for summary judgment, and **AFFIRM** the findings of the Commissioner.

The parties to this action may object to and seek review of this Report and Recommendation but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 15, 2019                    <u>s/Stephanie Dawkins Davis</u>
                                         Stephanie Dawkins Davis
                                         United States Magistrate Judge